401 P.2d 743

Floyd R. BEKINS, Appellant,
v.
Carlotta M. HUISH, Appellee.

2 CA–CIV 11.

Court of Appeals of Arizona.

May 4, 1965.

Darrel G. Brown, Tucson, for appellant.

Mesch, Marquez & Rothschild, Tucson, Alfred C. Marquez, Tucson, of counsel, for appellee.

MOLLOY, Judge.

This is an appeal from the denial of a motion to set aside a judgment granting specific performance of an agreement to convey real estate situated in Pima County, State of Arizona, rendered after a default taken against an out of state defendant who was served with a summons and complaint by registered mail.

The agreement to convey was alleged in the complaint to be a stipulation entered formally in another civil action previously filed in Pima County, whereby the defendant herein agreed to quitclaim to the plaintiff two parcels of real property particularly described in the complaint. The complaint asked that the defendant "be required specifically to perform the agreements set forth in said stipulation and execute and deliver a quitclaim deed for the above described two (2) parcels of realty to the plaintiff, costs of suit, and for such other relief as the court may deem proper."

Service upon the defendant was made in pursuance of Rule 4(e) (3), 16 A.R.S. which reads in part as follows:

"When the residence of a defendant not a resident of the state is known, the plaintiff may deposit a copy of the summons and complaint in the post office, registering it, directed to the defendant at his place of residence, and on return through the post office of the registry receipt thereof, shall attach the registry receipt to an affidavit showing: * * *

"Such affidavit shall be prima facie evidence of personal service of the copy of the summons and complaint as of the date of the return of the registry receipt to the sender, and shall be of like force and effect as though personally served outside the state. * * *"

Rule 4(e) (2) provides in substance that personal service out of the state is equiva-

lent to service by publication and Rule 4(e) (1) provides that service of the summons and complaint can be made by publication:

"When a party to the action, at the time of commencing the action or at any time during its progress, files an affidavit in the action that the defendant is a nonresident of the state, or that he is absent from the state, or that he is a transient person, or that his residence is unknown to the party, or that the defendant is a corporation incorporated under the laws of any other state or foreign country and is doing business in this state, or has property herein, but has no legally appointed and constituted agent in this state, or that the defendant is concealing himself to avoid service of summons, * * *"

■ There is nothing in these rules pertaining to service which specifies that service by publication, by personal service out of the state or by registered mail have any different efficacy than service within the state in the usual manner.

The judgment rendered on default in this action in addition to providing that the agreement be specifically performed by the defendant provided:

"* * * that if the defendant within ten (10) days from the date of service upon him by registered mail of Notice of entry of this Judgment fails to execute and deliver said good and sufficient Quitclaim Deed, as aforesaid, this decree shall have the effect and operation, at law and in equity, of such conveyance; that defendant and all persons claiming through or under him (other than the plaintiff) be and they are hereby forever debarred, restrained and enjoined from asserting any right, title or interest in or to any of the above described property or any part thereof, after the said ten (10) day period hereinabove specified."

Some time after the entry of this judgment a motion to vacate same was filed by the defendant contending that the same was void because the court lacked jurisdiction over the defendant for the purpose of entering said judgment.

On appeal, the contention is made that the judgment in question is void for two reasons: (1) that a suit for specific performance of a contract to convey real estate is an *in personam* action requiring "personal service" upon the defendant within the jurisdiction of the court and (2) that the judgment is different in kind from the relief prayed for in the demand for judgment.

The contention that an action for specific performance of a contract to convey real estate lying within the jurisdiction of the court requires personal service upon the defendant within the state is one that must be answered by a reanalysis of the Fourteenth Amendment to the Constitution of the United States and the many decisions of the Supreme Court of the United States interpreting same.

The vast body of law that has been developed in this country which segregates actions into *in personam, in rem* and *quasi in rem,* and from this segregation reaches conclusions as to whether "personal service" is necessary or whether "constructive service" will suffice, has developed from the landmark decision of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 [1877].

However, disconcertingly for those in the legal profession most respectful of the doctrine of *stare decisis,* the law enunciated in Pennoyer v. Neff, though never expressly overruled, is no longer in the mainstream of the constitutional law of this country.

In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 201, 2 L.Ed. 2d 223 [1957], the Supreme Court of the United States said:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. To-

day many commercial transactions touch two or more States and may involve parties separated by the full continent."

McGee follows International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [1945], in holding that:

"* * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he shall have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

If the rule be "minimum contacts" rather than territorial limits, then the whole doctrine of classifying actions into *in personam* and *in rem* proceedings becomes of questionable value. A scholarly article advocating a new approach is found in 73 Harvard Law Review, p. 909 [1906], under the title "Developments in the Law of State-Court Jurisdiction," which says in part [p. 955]:

"The traditional approach to jurisdiction based on property within the state seems to be unrealistic and inadequate —unrealistic in that the needs of the modern federal system can no longer be met by a test based simply on physical power and inadequate because it does not provide an answer when a case cannot conveniently be fitted into a traditional category."
[p. 956]:

"It is proposed that the traditional test of jurisdiction be replaced by one which would analyze and balance conflicting interests in order to reach a result consonant with fundamental fairness. This approach, rather than attempting to describe a particular case as an action in rem, quasi in rem, or in personam, and drawing jurisdictional conclusions solely on the basis of the category to which it is assigned, would apply one intergrated test and would

sustain or deny jurisdiction wholly on the weight of the interests involved."

That this may be the proper test today, rather than tomorrow, is indicated by the following decisions: Atkinson v. Superior Court, 49 Cal.2d 338, 316 P.2d 960 [S.Ct. of Cal.1957], appeal dismissed at 357 U.S. 569, 78 S.Ct. 1381, 2 L.Ed.2d 1546; Suffolk v. Chapman, 31 Ill.2d 551, 202 N.E.2d 535 [S.Ct. of Ill.1964]; Mladinich v. Kohn, 164 So.2d 785 [S.Ct. of Miss.1964]; Totero v. World Telegram Corporation, 41 Misc.2d 594, 245 N.Y.S.2d 870 [1963]; Executive Properties, Inc. v. Sherman, 223 F.Supp. 1011 [D.C.Arizona 1963].

As early as 1915, our own Supreme Court pointed out the shadowy distinction between *in rem* and *in personam* actions. Hook v. Hoffman, 16 Ariz. 540, 554, 147 P. 722, 728 [1915], quoted from Austin's Jurisprudence as follows:

" 'All rights in personam are rights to acts and forbearances and nothing more. The species of rights which have been termed *jus ad rem* form no exception. What has been styled *jus ad rem* is an elliptical expression, and is more properly rendered *jus ad rem acquirendum,* or, still more completely, *jus in personam ad jus in rem acquirendum.* That is to say, the person entitled has a right, availing against a determinate person, to the acquisition of a right availing against the world at large, and, by consequence, his right is a right to an act of conveyance or transfer on the part of the person obliged.' "

Hook v. Hoffman went on to say at p. 555, 147 P. at p. 728:

"So, too, the English lawyers were compelled to make a division of actions and to classify their actions which partook of the nature of both real actions and personal actions. Accordingly, as in Blackstone, actions were classified as real, personal, and mixed, because the two classes of actions, real and personal, were not comprehensive or satisfactory, so this

triple division of civil actions was introduced, and a class called mixed actions added. ' "Mixed" is a blessed word,' say the historians of our early law. 'The impatient student who looks down upon medieval law from the sublime heights of "general jurisprudence" will say that most of our English actions are mixed and many of them very mixed.' * * * "

If "minimum contacts" be the test, then we have no question but what there was ample jurisdiction in the trial court to proceed to render judgment in this action for specific performance of real estate lying within this state. The stipulation to convey upon which the action is based is one made in a judicial proceedings within this state. It is difficult to conceive of an action that would have more contacts with this state, granting that the defendant is a nonresident.

However, because the Supreme Court of the United States has not itself abandoned this concept of categorizing actions as in rem or in personam and has not always been consistent in applying the "minimum contacts" test when dealing with cases involving individuals [cf., May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Armstrong v. Armstrong (dissent), 350 U.S. 568, 76 S.Ct. 629, 100 L.Ed. 705 (1956)], this court will proceed to analyze the instant proceedings from the traditional viewpoint.

█ The weight of authority in this country seems to be that a suit for specific performance of a contract to convey real estate is "essentially one *in personam*, not *in rem*" [quote from 42 Am.Jur., Process, § 87, p. 75]. However, the weight of authority in this country also seems to be that if there is a statute conferring upon equity courts jurisdiction to enable them to enforce their decrees of specific performance without the necessity of having to reach the person of the defendant, then the action partakes sufficiently of an action *in rem*, or *quasi in rem*, so as to permit the equity court to render such a judgment on

"constructive service." 42 Am.Jur., Process, § 87, p. 75, Annotation at 93 A.L.R., p. 621, supplemented at 173 A.L.R. 985.

Appellant relies upon Hart v. Sansom, 110 U.S. 151, 3 S.Ct. 586, 589, 28 L.Ed. 101 [1884], which said:

" * * * a court of equity acts *in personam*, by compelling a deed to be executed or canceled by or in behalf of the party. It has no inherent power, by the mere force of its decree, to annul a deed or to establish a title "

Hart v. Sansom appears to have been overruled by Arndt v. Griggs, 134 U.S. 316, 10 S.Ct. 557, 33 L.Ed. 918 [1890]. Cf. Union Sulphur Co. v. Texas Gulf Sulphur Co., 32 F.2d 517, 518 [Dist.Ct. of Texas, S. D.1929]. In view of the susbtantial expansion of state jurisdiction under subsequent pronouncements of the United States Supreme Court, Hart v. Sansom is not deemed to be of great assistance in solving the problem before the court at this time.

The only real problem presented under the state of authority at this time as to whether this should be classified as an action *in personam* or *in rem* is whether or not the statutes of this state authorize constructive service in this particular type of action.

█ This authority this court finds from the fact that the subject rule permitting service outside of the state does not limit the service to any particular type of action. It seems to this court that the only reasonable interpretation must be, if actions are to be divided into *in personam* and *in rem* actions, that the intent was that the particular type of service could be used in any action in which "constructive service" would be sufficient. That the statutes permit this type of action to proceed as an *in rem* action is reenforced, if it need to be reenforced, by A.R.S. § 33–456 which reads as follows:

"When a judgment directs the conveyance of real property or the delivery of personal property, the judgment shall pass title to such property

without any act by the party against whom the judgment is given."

In Hook v. Hoffman, supra, the court relied in part upon this provision of our code, which was then paragraph 552 of the Revised Statutes of 1913, in holding that a suit to establish ownership of shares of an Arizona corporation could proceed when service had been made upon an out of state defendant by registered mail [16 Ariz., at 551, 147 P. 722].

Hook v. Hoffman decided that it was not necessary to bring immovable property, such as the part ownership of a domestic corporation, into the possession of the court by attaching it by some writ and laid down a general rule which we believe to be applicable to the instant action:

"* * * where the subject-matter of the action is directed against, or only affects, property located in this state; that, where the situs of this property is immovably fixed within its territorial jurisdiction, the court may acquire jurisdiction of the *res* by the filing of a bill in equity having for its subject-matter said property and for its purpose an adjudication as between the parties as to who is the real owner thereof, * * *"

Three modern decisions appearing to be closely in point upholding the validity of similar proceedings under similar statutory law are: Churchill v. Bigelow, 333 Mass. 196, 129 N.E.2d 903 [1955]; Associated Truck Lines v. Baer, 346 Mich. 106, 77 N.W.2d 384 [1956]; and Gruwell v. Hinds, 130 N.W.2d 92 [S.D.1964].

In the Associated Truck Lines case, the Supreme Court of Michigan noted two statutes, the one permitting service by publication [C.L.1948, § 613.46] and the other providing that a decree should act as a conveyance [C.L.1948, § 622.18], which are substantially the same as our own pertinent statutes and rules, previously cited herein. The court said in part:

"In view of the mentioned statutory provisions, it must be held that this suit for specific performance of a binding agreement to sell real estate, * * * sufficiently partakes of the nature of a proceeding *in rem* or *quasi in rem*, as affecting title to real estate, that, with respect to the latter only, the court acquired, by substituted service of process, the jurisdiction necessary to the decree."

■ Thus, upon either theory, of "minimum contacts" or that of an *in rem* or *quasi in rem* action, this court holds that the trial court had jurisdiction of the subject action for specific performance of a contract [stipulation] to convey real estate lying within this state.

■ We pass to appellant's contention that the decree exceeded the relief prayed for in the complaint. The complaint prayed that the court require the defendant to execute a "Quit-Claim Deed" to the property which was the subject of this action and for "such other relief as the court may deem proper." The notice given was certainly reasonably calculated to apprise the defendant that the plaintiff claimed his entire ownership, if any, in this property and thus satisfies due process insofar as notice is concerned. Laz v. Southwestern Land Company, 97 Ariz. 69, 397 P.2d 52 [1964].

The formalistic language used in the judgment, granting an injunction, et cetera, has not been separately attacked by appellant and is deemed by this court to be mere surplusage and not to affect the basic thrust of the judgment. The language pertaining to the decree acting as a conveyance is unnecessary in view of the clear provision of A.R.S. § 33–456, quoted above.

The briefs of the parties were concerned to some degree with whether Rule 70, Rules of Civil Procedure [which also provides for a decree of a court transferring title when there has been a judgment directing the execution of a conveyance] can enlarge the jurisdiction of the court, in view of the provisions of Rule 82, Rules of Civil Procedure, which provides:

"These Rules shall not be construed to extend or limit the jurisdiction of

superior courts or venue of actions therein."

Because of the existence of A.R.S. § 33–456, it is not felt that it is necessary to answer this argument, though the court believes it has been answered in the affirmative by Heat Pump Equipment Company v. Glen Alden Corporation, 93 Ariz. 361, 380 P.2d 1016 [1963].

The judgment of the trial court is affirmed.

HATHAWAY, J., and DON T. UDALL, Retired Judge of Superior Court, concur.

Note: The Honorable Herbert F. Krucker being disqualified, the Honorable Don T. Udall, Retired Judge of the Superior Court of Navajo County, was called to sit in his stead and participate in the determination of this action.