251 P.2d 631

**SCHUSTER et al. v. SCHUSTER.**

No. 5422.

Supreme Court of Arizona.

Dec. 22, 1952.

Rehearing Denied March 17, 1953.

Mangum & Flick, of Flagstaff, for appellants.

Earl Platt, of St. Johns, Guy Axline, of Holbrook, Gilbert & Gilbert, of Santa Fe, N. M., for appellee.

THOMAS, Superior Court Judge.

Generally this proceeding presents an appeal from an order of the trial court refusing to revoke its judgment theretofore entered dissolving a voluntary irrevocable trust. It was asserted that the order of revocation was made without the consent of infant beneficiaries under the trust, and made at a time when the court did not have jurisdiction over the persons of the infant beneficiaries who were alleged to have been nonresidents of the state at the time the order of dissolution was entered.

The factual situation out of which these proceedings arose may be summarized as follows:

On the 12th day of January, 1938, Arthur Schuster, father of the appellants and brother of appellee Edward Schuster, made and executed a voluntary irrevocable trust, naming Edward Schuster trustee. By the provisions of the trust the net income there-

from was to be paid to the settlor during his life, and upon his death was to be paid to his two children, Ruth and Arthur, during their minority. Upon attaining their majority provision was made for the distribution of the corpus of the trust to the two children over a twenty-five year period. In the event the children should not live to take the corpus provision was made for its distribution to contingent beneficiaries, being his grandchildren, his sister Margaret Schuster Ellison, and his brother Edward Schuster, the designated trustee and appellee herein.

The trust agreement specifically stated that it was "to be irrevocable without the consent of the trustee and *all* beneficiaries".

On September 6, 1940, suit was brought in the Superior Court of Apache County by the settlor against appellee Edward Schuster, trustee, and appellants Ruth and Arthur, at that time minors. The contingent beneficiary, Margaret Ellison, was not included in the action, and the record establishes that she was not served with process nor did she consent to the dissolution of the trust. The complaint was for a declaratory judgment to establish the legal rights and liabilities of the respective parties to the trust. With the filing of the complaint a petition for appointment of guardian ad litem for the infants Ruth and Arthur was filed, and on the same date Marian Schuster, step-mother of the children, was appointed guardian ad litem. On the above date a joint answer to the complaint was filed by the trustee and by Ruth and Arthur,

through their guardian ad litem. On the 13th of September, 1940, an amended complaint was filed by settlor praying for revocation and termination of the trust agreement. The trustee, Edward Schuster, and the appellants, through their guardian ad litem, and represented by the same attorney, jointly answered the amended complaint. The case proceeded to trial and hearing on this last named date, and was heard and determined on the testimony of the settlor, Arthur Schuster, and judgment rendered revoking and terminating the trust agreement.

On October 8, 1947 appellants, having become of legal age and both having married, timely filed their motion and affidavit to vacate and set aside the above-mentioned judgment of September 13, 1940.

On July 28, 1949 the motion of Roger Dale Schuster to intervene, for the purpose of moving to vacate the judgment dissolving the trust, was granted. Apparently the matter was reconsidered by the learned trial judge for on June 20, 1950 he made an order setting aside the above order to intervene; and, denied the motion of Ruth and Arthur to vacate the judgment. The appeal is from these orders.

Appellants set up four assignments of error supported by eleven propositions of law. In the interest of brevity, assignments of error 1 and 4 will be considered together as they both go to the jurisdiction of the court.

Assignment of error No. 4 is set up in the following language:

"The lower court erred in depriving the minor defendants of their property rights without due process of law in violation of their rights under the Constitution of the State of Arizona and the Fourteenth Amendment to the Constitution of the United States."

This assignment of error is based on the undisputed record that prior to and at the time of the bringing of the suit to dissolve the trust agreement, and at the time of the appointment of a guardian ad litem for the minor defendants, and at the time of the rendition of the judgment of dissolution, said minor defendants were residents of the state of New Mexico and at no stage of the proceedings were ever served with copy of summons in Arizona or elsewhere. The assignment of error goes to the proposition that in view of the above facts the Superior Court of Apache County acquired no jurisdiction over the persons of the minor defendants. Since the very foundation of judicial proceedings is jurisdiction or the power to act, and the further fact that courts from time immemorial have been charged with the high and exalted duty to scrupulously protect the rights of infants, the question raised here merits the most careful examination.

No court can be said to have acquired complete jurisdiction so as to hear and determine any cause until it has obtained through due process, prescribed by law, jurisdiction over both subject matter and the parties, and the power to render the particular judgment that was rendered. City of Phoenix v. Greer, 43 Ariz. 214, 29 P.2d 1062; Duncan v. Truman, 74 Ariz. 328, 248 P.2d 879.

This question presents itself: did the Superior Court of Apache County acquire jurisdiction of the minor defendants to render the judgment in question? Admittedly the appellants, Ruth and Arthur, were minors; were not served with copy of complaint or summons; and, were nonresidents and at all times without the territorial limits of the state of Arizona.

Appellants deny the acquisition of jurisdiction. Appellee, in effect, seeks to sustain jurisdiction by the fact that a guardian ad litem was appointed, and on the assumption the proceeding was one in rem—the corpus of the trust being in the state of Arizona.

To sustain their respective positions appellants and appellee lean heavily on the Arizona case of Bell v. Bell, 44 Ariz. 520, 39 P.2d 629, wherein failure to serve summons on defendant minors was held merely to be erroneous, but not fatal, error. In effect the court held that where the record discloses that the infant had been properly represented by guardian ad litem, failure to serve summons upon infants was mere irregularity which did not deprive the court of jurisdiction. It was further determined that a court of equity may appoint a guardian ad litem for a *resident* minor defendant in

*cases affecting realty of minors situated within the territorial jurisdiction of the court* without service of summons on the minor.

A careful consideration of the Bell case, supra, does not appear determinative of the present question for the following reasons: in the Bell case the minors were residents of Arizona; were physically present before the court at the trial; the action concerned realty of the minors situated within the territorial jurisdiction of the court; and, the provisions of Section 21–305, A.C.A. 1939, requiring service of copy of the summons and complaint, were not in effect when the Bell case was decided.

■ Furthermore, it is insisted by appellants that the judgment in the instant case was not one in rem, as in the Bell case, but acted in personam upon the appellants as it did not affect the subject matter of the res but operated to affect the personal rights, privileges, duties and obligations of the parties to the trust agreement. Generally an action such as the one involved here, to revoke or terminate a trust, acts in personam. Densby v. Acacia Mutual Life Association, 1935, 64 App.D.C. 319, 78 F.2d 203, 101 A.L.R. 863; State ex rel. Truitt v. District Court of Ninth Judicial Dist., 44 N.M. 16, 96 P.2d 710, 126 A.L.R. 651; State ex rel. Miller v. District Court, 1947, 120 Mont. 423, 186 P.2d 506.

■ Clearly in this case the judgment took from the appellants a right and interest which was personal to them, and which could have been personally relinquished by them had they not been incapacitated. It follows that the effect of the judgment rendered acted in personam to the parties to the action.

"From the earliest times infants were regarded as entitled to an especial protection of the state, and the King, as 'parens patriae', was parent, in a peculiar sense, of all orphaned or dependent children *within the realm.* This jurisdiction was exercised through the chancellor, and chancery became in a sense the supreme guardian of all infants, charged with the protection alike of their personal and property rights." (Emphasis supplied.) 27 Am. Jur. 822, Sec. 101.

"In this country the several states stand, with reference to the persons and property of infants, in the situation of parens patriae. No such jurisdiction is vested in the United States except as to territories and the District of Columbia. The state, as parens patriae, is authorized to legislate for the protection, care, custody, and maintenance of children *within its jurisdiction."* (Emphasis supplied.) 27 Am. Jur. 823, Sec. 102.

■ It is clear from the foregoing that the right and duty of an equity court to protect the personal and property rights of an infant is ordinarily limited to those in-

fants within the geographical jurisdiction of the court. If any attempt is made to extend this principle beyond the borders of any state, there would necessarily be an infringement upon the equal right of the state of the infant's residence to protect and provide for the personal and property rights of infants within its jurisdiction.

Following the above-mentioned principles, the state of Nebraska, in the case of Geary v. Geary, 102 Neb. 511, 167 N.W. 778, 20 A.L.R. 809, determined the issues respecting an infant within its jurisdiction, acting in the role of parens patriae, and held that it did not consider itself bound by any prior judgment on the same issues rendered by an Iowa court since the infant was no longer in Iowa, thereby denying that state the right to continue in the role of parens patriae. In a similar situation the state of Colorado assumed to protect an infant within its borders, notwithstanding the fact that the infant's legal residence was in another state, presence within the court's jurisdiction being the basis of the assumption of the role of parens patriae. McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444, 160 A.L.R. 396. Another case following the same rule, emphasizing the necessity of the infant's presence within the jurisdiction of the court as the basis of acting on its behalf, is: People ex rel. Wagner v. Torrence, 1933, 94 Colo. 47, 27 P.2d 1038.

In all cases involving infants it is the court which undertakes to protect the interest of the infant, and the guardian is merely an agent appointed by the court to act for the infant. The guardian himself has no estate or interest in the infant's property. This was emphasized in Martineau v. City of St. Paul, 8 Cir., 172 F.2d 777, where, for purpose of diversity of citizenship, it was the infant's residence that controlled and not that of his guardian, as the court regarded the infant as the litigant and the guardian merely an agent.

We feel that the case of N. Y. Life Ins. Co. v. Bangs, 103 U.S. 435, 26 L.Ed., 580, 581, 582, is very much in point. In that case, after the death of an insured, the insurance company brought suit against the nonresident infant defendant, who was the beneficiary under life insurance policies, to cancel same on various grounds. A guardian was appointed for the infant without notice to him and judgment was ultimately rendered in favor of the company cancelling the policies. Subsequently the beneficiary instituted an independent action to recover the face amount of the policies, and the life insurance company set up the former judgment as a bar. It was ultimately held that the court in which the judgment was rendered had no jurisdiction of the infant who resided in another state, and that the appointment of a guardian under the circumstances could not possibly affect his rights. In the course of the opinion the court stated as follows:

"* * * The infant Bangs possessed no property in Michigan when the suit in equity was commenced

against him. That suit did not concern any property, real or personal. It was brought to cancel a contract made with his father, and any decree respecting it would necessarily have been coram non judice, unless the parties interested were before the court upon the service of a subpoena or their voluntary appearance. The infant, being absent from the State, could not be personally served.

\*    \*    \*    \*    \*    \*

"There being here no property of the infant defendant within the district of Michigan, which the court could lay hold of—and he being absent from it —there was no foundation laid for any progress by the court in the case. It never acquired jurisdiction over the infant; it could, therefore, appoint no guardian ad litem for him, and the decree rendered against him was ineffectual for any purpose."

The case distinguishes those other cases wherein a guardian is appointed for an infant who is within the jurisdiction of the court, or who comes within the jurisdiction of the court pending the litigation. Significantly the opinion concludes with the following statement:

"But in none of the cases to which our attention has been called has a judgment been upheld where a guardian ad litem had been appointed for a nonresident infant against whom a purely personal demand was prosecut-

ed. If such a case exists, the judgment in it can have no greater force than one rendered for a personal demand against a nonresident upon any other form of constructive service. And, that constructive service will not give jurisdiction in such cases, is the established doctrine of this Court." Citing Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565.

We can see no difference in principle where the suit was to cancel an insurance policy or to terminate a trust.

In the absence of jurisdiction over the minors the court was without power to appoint a guardian ad litem for them, and it is clear that as to them judgment should be set aside. Ginn v. Southwest Bitulithic Co., Tex.Civ.App., 149 S.W.2d 201.

In the case of Lella v. Holman, 166 Misc. 796, 3 N.Y.S.2d 352, 353, where defective service was obtained on a minor 19 years of age, the court in that case said:

"Failure to file the papers mentioned in Civil Practice Act, § 231, renders the service of the summons invalid. As we have, then, no valid service of process upon the infant defendant, it follows that this court never acquired jurisdiction of the person of said defendant. This defect was not cured by the appearance, on behalf of the infant defendant, of his guardian ad litem appointed by an order of this court, and the service of an answer. This court had no power to appoint a guardian ad

litem for the infant defendant, until it had acquired jurisdiction of the person of the infant defendant, and jurisdiction was not effected until service of the summons upon the infant defendant had been completed pursuant to the statutory requirements." Crouter v. Crouter, 133 N.Y. 55, 61, 30 N.E. 726.

The most recent expression of this general principle of law by this court was In re Hindi, 71 Ariz. 17, 222 P.2d 991, wherein we approved the text as set up in the American Law Institute. Restatement of Conflicts, Sec. 77, as to the bases of jurisdiction over individuals.

"Section 77. Bases of Jurisdiction.

(1) The exercise of jurisdiction by a state through its Court over an individual may be based upon any of the following circumstances:

"(a) The individual is personally present within the state;

"(b) He has his domicil within the state;

"(c) He is a citizen or subject owing allegiance to the nation;

"(d) He has consented to the exercise of jurisdiction;

"(e) He has by acts done by him within the state subjected himself to its jurisdiction.

"(2) In the absence of all these bases of jurisdiction, a state through its courts cannot exercise jurisdiction over individuals."

In this case it was sought to fix the obligation of the defendant in a bastardy proceeding to support his minor child. The defendant was a resident of the state of New Mexico at the time of notice upon him. In denying jurisdiction over the defendant the court held that a judgment in personam against a nonresident who does not enter a voluntary appearance or otherwise waive service of process, can be predicated only upon jurisdiction of a nonresident acquired by proper service of process upon him within the territorial jurisdiction of the court. The court likewise noted that ever since the famous case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, it has been accepted as axiomatic that a judgment which acts in personam may not be rendered against a defendant unless such defendant had either been served personally with process *within the territorial jurisdiction of the court,* or has voluntarily entered an appearance in such court. Of course there are exceptions to this rule, as where the defendant has done business within the state, a situation with which we are not here concerned. See D. W. Onan & Sons v. Superior Court, 65 Ariz. 255, 179 P.2d 243.

■ Unlike the holding in the Bell case, supra, it cannot be said here that the appointment of a guardian ad litem for nonresident minors, without service of process, was a mere irregularity and did not

affect the jurisdiction of the court over the minors. To so hold would dispense with one of the essentials of our jurisprudence —that every person shall have his day in court. Certainly, where minors are involved, there can be no dispensing with any of the rights or safeguards created for their protection. It would be a legal paradox for the courts to throw every conceivable protection around the rights and interests of infants and then disregard the essential fact of jurisdiction, by assuming a jurisdiction which they could not have obtained over an adult under similar circumstances. Neither should courts be zealous to find some theory upon which a method of depriving infants of valuable rights may be sustained. We come to the conclusion that the Superior Court of Apache County acquired no jurisdiction of appellants when it rendered its judgment, and, as to said appellants, said judgment was and is without any effect whatsoever.

By an appropriate proposition of law it is asserted that where a valid and effective voluntary trust has been created and no power of revocation has been reserved, it cannot be revoked by the creator without the consent of the beneficiaries thereunder; and, where such destruction is attempted by litigation, all indispensable parties must be under the jurisdiction of the court.

As pointed out earlier in the opinion, one of the provisions of the trust indenture was as follows:

"It is further stipulated and agreed that this agreement is irrevocable without the consent of the trustee and all beneficiaries herein named."

In passing upon this question it is well to examine the general attributes of trusts, such as the one in question. This was an express trust and differed from a gift in that the trust involves some period of time for its performance, and during such time it is an existing legal relationship involving a set of primary rights and duties; whereas, a gift is a transfer of property on a fixed date. It also may be said to differ from a contract in that a trust always involves an equitable ownership embracing rights and duties fiduciary in character, which may be created by a contract on a consideration, a declaration without consideration, and other modes; whereas, a contract is a legal obligation on an undertaking supported by a consideration, which obligation may or may not be fiduciary in character.

■ It seems well established that where the settlor reserves the power to revoke a trust only in a specified manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances. Restatement of the Law— Trusts, Sec. 330(j), p. 994; 54 Am.Jur. Sec. 77–78, pp. 79–80; 65 C.J.Trusts, p. 347.

■ In the instant case revocation was impossible without the consent of all the

beneficiaries. This being the method of dissolution of the trust selected by the settlor, he was bound by it. It was essential that all parties to the trust be properly before the court before it could assume jurisdiction to dissolve the trust. First Nat. Trust & Sav. Bank v. Superior Court, 19 Cal.2d 409, 121 P.2d 729; Bixby v. California Trust Co., Cal.App., 190 P.2d 321; Mabry v. Scott, 51 Cal.App.2d 245, 124 P. 2d 659.

In the last cited case it was held that when the litigation is between the beneficia· ries, *all* beneficiaries of a trust are indispensable parties; without their presence the trial court has no jurisdiction to proceed.

█ Obviously the appellants, being minors, could not consent. Beneficiary Margaret Schuster Ellison was not made a party to the suit, and her consent is not a matter of record. The unborn children of Ruth and Arthur were contingent beneficiaries and as such were necessary parties to the dissolution of the trust. This court has held in Johnson v. Superior Court, 68 Ariz. 68, 199 P.2d 827, that the precise nature of the beneficial property interests of the beneficiaries need not be ascertained, as any interest, whether vested or contingent, is sufficient to protect the trust fund and see that the trust is properly executed, and then quoting from Roberts v. Michigan Trust Co., 273 Mich. 91, 262 N.W. 744, 749, adopted this quotation:

"In Lewin, Trusts (13th Ed.) p. 874, the correct rule is stated as follows:

'And generally a cestui que trust, who can allege an existing interest, however minute or remote, may, upon reasonable cause shown, apply to the court to have his interest property secured.' " (citing cases.)

Scott on Trusts, Vol. 3, Sec. 340, states:

"The settlor cannot revoke the trust if he has not reserved a power of revocation unless all of the beneficiaries consent. A non-consenting beneficiary cannot be deprived of his interest under the trust, whether the interest is vested or contingent, whether the beneficiary is ascertained or not. If some of the beneficiaries refuse to consent to the revocation of the trust, or are under an incapacity, or are not ascertained, the settlor cannot revoke the trust although the other beneficiaries consent. (Citing cases.)

\* \* \* \* \* \*

"In the absence of a statute otherwise providing, a trust cannot be revoked by the settlor even with the consent of all the beneficiaries who are in being, if there are other beneficiaries not yet in being who therefore cannot possibly consent. \* \* \*

\* \* \* \* \* \*

" \* \* \* It is immaterial that they have only contingent interests. \* \*"

54 Am.Jur. 78 states the rule thus:

"A trust cannot be terminated by the consent, contract, transfer, or conveyance of beneficiaries unless all beneficiaries have given their consent or joined in the contract, conveyance, or transfer, and unless all beneficiaries are of full age and otherwise sui juris. Furthermore, a trust cannot be terminated by the consent or acts of beneficiaries where there are contingent interests in the trust which cannot be determined until the happening of certain events. In other words, beneficiaries with vested interests cannot by termination of the trust shut out contingent beneficiaries." (Citing cases.)

It would thus abundantly appear from the foregoing authorities that it was error to have permitted the dissolution of the trust without the consent of all beneficiaries. By the same token it was error for the lower court to deny the petition to intervene of Roger Dale Schuster, a minor, and a contingent beneficiary in the trust agreement. In view of the above holding it would serve no useful purpose to prolong the opinion by a discussion of other assignments of error, none of which have as much merit as the ones herein determined.

Having determined the court was without jurisdiction, and that the judgment was void from its inception, we find no merit in the contention of appellee that the court is without jurisdiction to proceed in a direct attack upon the judgment such as this is, in the absence of original parties to the action, for the reason that the judgment being a nullity may be set aside by the court upon the motion of any interested party, or upon its own motion.

The order vacating the original order allowing intervention on the part of Roger Dale Schuster is set aside, and the order granting intervention is reinstated. The order denying the application of Ruth Schuster and Arthur Marine Schuster to vacate the judgment of September 13, 1940 is set aside, and the trial court is directed to enter judgment vacating and setting aside said judgment.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.

UDALL, C. J., having disqualified himself, the Hon. FRANK E. THOMAS, Judge of the Superior Court of Cochise County, participated in his stead in the determination of this appeal.